Good morning, your honor, and may it please the court. I wish to reserve two minutes of my time in rebuttal. As you know, my name is Sarah Churchill, and I represent Mr. Irobe as well as Supua Pakaro Grocery in this matter. In 2008, Mr. Irobe left his homeland of Somalia and eventually found his way to Maine via Nashville. He purchased a small grocery store on Lisbon Street in Lewiston and began to serve the local Somali community there through foodstuffs that were in demand for his community. Camel, goat, rice, and other assorted items. The store itself was relatively small, but packed a large quantity of things. He had a separate room for the fresh and frozen meat that was a rarity in the general locality. The community that he served came to his store in groups. They shopped with him because they had a connection to him. They liked him and they thought he was a good person. They would often come at the beginning of the month and purchase, excuse me, a month's load of groceries at a time, therefore using a large portion of their SNAP benefits. When Mr. Irobe purchased the store in 2015, he applied to be able to accept food stamp benefits and his application was granted. A large portion of the customers that shopped at his store used these benefits to pay for their goods. In the latter part of 2015, after being open for several months, Mr. Irobe received notice from the U.S. Department of Agriculture that he had been suspected of trafficking in food stamps. The letter that he received was very detailed and included several computer printouts from the SNAP office which detailed what they believed to be suspicious transactions. Mr. Irobe challenged the administrative finding of trafficking through the complete agency process and ultimately the finding of trafficking was upheld. Mr. Irobe then filed a suit in the U.S. District Court in the District of Maine to further challenge the finding. Judge Hornby ultimately granted summary judgment in that matter and that's how we come to you. Mr. Irobe produced as evidence in that matter a number of documents and items. He testified at a deposition and that testimony was submitted as part of the summary judgment record. The entire administrative record from the agency decision and findings was submitted for Judge Hornby's consideration as well as a number of inventory records and documents that he had gathered regarding the inventory purchased that he sold at the store. At the summary judgment stage, the court is required to draw all inferences against the non-moving party. We're required to draw all reasonable inferences. That is correct, all reasonable inferences. And in this particular case, the inference that I believe is at the point that the United States Department of Agriculture was relying on in part for their finding, that the court accepted the government's inference for those printouts, that the transactions listed therein were fraudulent unless the plaintiff could prove specifically for each and every single transaction that they were not fraudulent. Mr. Irobe, by the nature of the way he ran the business, tabulated the orders in paper. He used a calculator. He did not have computerized records. But counsel, put aside the court's dictum about proving each and every inference. Let's assume for the time being that that sets too high a bar. That wasn't essential to the court's decision. What's important is that you have this electronic database and a large amount of redemption data. You have historical patents established by unchallenged testimony and specific to the geographic region. That data and patent give rise to inferences that is very likely, if at all, rebutted as to the overall practice. Not as to each and every transaction, but as to the overall practice. And I'm struggling with the notion of what's wrong with the inferences overall that Judge Hornby drew from that evidence. Mr. Irobe provided, through his testimony and through other documents, evidence that we believe rebuts the inference drawn by the government from the electronic data and the patents that you note, Your Honor. And that evidence comes, one, from the fact that there was inventory that was actually moved through and sold in the store. No, but let's talk about the inventory evidence. All right? What the inventory proves is that some legitimate foodstuffs were moved through the store. But the fact that a merchant sells to customers merchandise that was legitimately eligible for food stamps doesn't speak to whether he also is redeeming food stamps for cash or ineligible merchandise. One inference is not exclusive of the other. And the inventory receipts that were tended were nowhere near enough to account for the entire volume of sales at the store. Nowhere near it. As I recollect, there was approximately $176,000 in inventory receipts. I would agree that that one fact alone may not be enough, but you have to couple it with the other facts in the case, which is the testimony from Mr. Orobi regarding the manner in which the community around him typically made these purchases, which is different from... Excuse me. I've read his deposition. He didn't say typically. He said sometimes. That's fair. He did say sometimes. He did say sometimes people would come in groups to his store. He would ring up the purchases together, resulting in very quick transactions, and that he would also, also customers sometimes would forget items, meat in particular, because it was out back in a different room in the cooler, and he would have to ring up in quick succession another transaction on that card. This is a case where you can't necessarily look at just one piece of evidence to knock down the inference from the data. You have to take it as a whole, as I think you do in every case. Because Mr. Orobi was able to provide evidence and granted we can sort of quibble with the quality of it, but at the procedural posture of the case as it stood on summary judgment, the reasonable inference to draw in favor of the non-moving party, which was Mr. Orobi, would be that he had rebutted the primary inference from the electronic data, and therefore the matter should have been bound over for trial. This case is also interesting in the sense that there is a final agency finding, but a de novo review is required of that finding, and as such, there is no complete weight given to the agency finding. Thank you. I'm happy to entertain questions, or I'll start with some prepared remarks. Sure, ten minutes. Okay, thank you. Starting with some of the points that counsel raised, let me focus on the evidence just for a minute. The evidence that the United States Department of Agriculture provided at summary judgment was overwhelming. The United States provided 417, over the space of a day, of food trafficking. That's over 100 per month, over three per day. The United States provided evidence that the average sales of SNAP recipients at the Sula Kuhar grocery was more than twice that of the average sales of similar halal stores. That provides important contextual evidence when we're considering the generalized statements that were provided by Mr. Arobi. Mr. Arobi basically provided a generalized rebuttal to specific evidence that the United States introduced by speculating about the buying practices of his customers based on largely cultural and socioeconomic reasons. However, were those generalizations to be accurate, then those customers would be making similar purchasing decisions at the nine stores within a quarter mile of Mr. Arobi's grocery that carried the same products. But the United States put in evidence that the average size of the SNAP transaction at Mr. Arobi's grocery was more than twice that of similarly situated, extremely close-by stores. The extent that the court were to consider what the United States used to be speculative and generalized statements by Mr. Arobi that lacked foundation as to the specific SNAP recipients at issue here, those generalizations are undermined by the fact that there are different shopping patterns at functionally identical stores. The United States also put in evidence regarding the size of the grocery, demonstrating, and this is all unrebutted and stipulated, in fact, that the checkout counter is significantly smaller than the size of his lectern. There are no hand carts, there are no grocery carts, making it largely impossible to bring forth a large amount of items and quickly process them. That reality on the ground makes the evidence of trafficking based on the data analysis that much more compelling. I'm gathering that if he had kept records of his purchases of inventory and his sales, then he could have come in and sort of on a categorical basis have rebutted a lot of your inferences by saying, here's my total income records, and indeed I did buy twice as much inventory as those other stores. He could do that in a general way. Right. So his problem was he didn't seem to have those records that would show that he actually purchased inventory that was double the other stores. Well, that was one of his problems, but that certainly wasn't the other one. So once he doesn't have that, he then gets down to needing to do somewhat sampling of your, take a random sample and then bring in individual consumers on each one or something like that. Something like that. But Your Honor, I note that there's ordinary discovery in a case like this. This is an APA case, and the plaintiff had every opportunity to, in fact, determine who these, the households were identified by number, by SNAP number. Determine who they were and obtain testimony from those households. Didn't do that. The closest that the plaintiff came is hearsay evidence from his lawyer after she had spoken with some customers in the store during the litigation phase. There's nothing to tie, so basically what we're left with, Your Honor, are generalized statements about cultural, socioeconomic habits of shoppers that are at odds with the disparity between the grocery and other local similar stores, and that are completely unlinked to the actual shoppers as you hear with the data on which the United States relied. So basically the Goldberg's case is based on circumstantial evidence. You don't have any direct evidence. For example, you didn't put an undercover agent there to deny it and say this is what happened. That's correct, Your Honor. Yes, the United States has provided copious amounts of evidence on that circumstance. There was no undercover agent. There was no filming. There are cases throughout the country indicating that make very clear that circumstantial evidence is sufficient to prove the case both at trial or at summary judgment. The statute makes it clear that electronic data is perfectly adequate to prove the case. So the absence of direct evidence really brings me to the opposing counsel's point about inferences. Of course, when you're resting your case on circumstantial evidence, then inferences are part of the equation. What basically the USDA was asking Judge Hornby to do, the district court to do, was to draw more or less four sets of inferences for each category of data that was provided. There were four categories of data that indicated trafficking. In each instance, the USDA asked the court to infer from that data, along with the other evidence that was provided, the size of the grocery, the disparity with other similar grocery stores, that more likely than not trafficking occurred. So let me see how I understand it. You come in and you show twice as much volume as the average. And so you want an inference generated that there's something wrong going on from that. No, Your Honor. That was not one of the categories of purchases indicative of trafficking. So that's just background. That's important context. It's important because it completely undermines the main justification provided by… So if he had come in and said, these other eight stores that you've looked at, all of them are open only three days a week, I'm open seven days a week, then maybe we'd have a factual issue on that background point. That's where things are interesting, I think, with this statute. What the plaintiff needs to do to survive summary judgment in a SNAP case is a function of what the government puts in for evidence. And if the government comes in with an undercover agent that has ten instances of trafficking and nothing else, and that's the evidence, well, that will define the evidence that the retailer will need to put in to rebut. Similarly, if the evidence comes in that's purely data-driven with no other evidence, it's simply EBT data, well, that affects the evidence that's required to rebut. In this instance, entire categories of data went unrebutted. For example, the Category 1, where there were multiple sequential purchases from different households. So a transaction would run for $175 for one household, and then three minutes later, $125 for a second household. Too quickly to be reasonable, given the constraints of the grocery store, but to be believable. The only justification provided by Mr. Erobi was his generalized statement that sometimes groups would come in together, and when they purchased the same thing, he'd add it all up together and then run their carts. The problem is that in his deposition, he specifically agreed that it was when they purchased the same thing. However, in Category 1, the multiple sequential purchases, those weren't of the same amount. So his explanation has nothing to do, it doesn't explain away the numbers at all. So Category 1, the data that has been provided for which an inference should be drawn, goes entirely undisputed. Category 2, multiple transactions from individual accounts. So household 193A conducts a transaction, and then shortly thereafter conducts another one. That was explained away, in general, by the fact that people sometimes forget. They'll go to the counter and buy their things and realize they forgot their milk or their camel meat or something. But at least one instance, household 193A conducted four transactions in the space of three hours. That's not when you forget something. So again, that's a subcategory that's completely unrebutted. So irrespective of the requirement to rebut each individual instance, we have categories that went unrebutted, Your Honor. Thank you. Thank you. Thank you. Just briefly, I wanted to clarify something I think I heard opposing counsel say. With regard to the similar stores in the surrounding area to Mr. Arobi's grocery, there is data in the record regarding the nature and amount of purchases made by customers at those stores using SNAP benefits. I don't believe in the record there's any data or evidence regarding the amount of inventory that those stores purchase. So to the extent we're looking to see if Mr. Arobi's store is purchasing more volume and therefore selling more volume, I don't think there's anything to compare it to in the record. I think what we have for data for inventory purchases for the store comes from Mr. Arobi and that's the only figure. And with regard to the categories that go unrebutted, I think I've explained it. There is evidence in the record to rebut the category. Whether it is enough to preclude summary judgment is the lion's share of the issue before you and before Judge Hornby. Thank you. Thank you.